IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

ERIC HOUSE, and
MARQUEL ALI

                Plaintiffs,

v.                              CIVIL ACTION NO.   3:16-06654

RENT-A-CENTER FRANCHISING
INTERNATIONAL, INC.,

                Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Rent-A-Center, Inc.'s[1] Motion to Dismiss, or Stay the Case and Compel Arbitration (ECF No. 5).   For the following reasons, the Court **GRANTS** the Motion to Compel Arbitration and **DISMISSES** this case **without prejudice** pending arbitration.

### I.      Background

Plaintiffs both work at Defendant's Rent-A-Center store in Huntington, West Virginia. *See Pls.' Compl.*, ECF No. 1, at ¶ 9.   Plaintiffs' claims revolve around a series of alleged racial discriminatory acts by Defendant's customers that Defendant has failed to prevent or rectify.   In each instance, Plaintiffs allegedly reported the racist comments and conduct to Defendant's supervisors, and the supervisors, in turn, made reports to corporate headquarters.   *Id.* at ¶ 15.

---

[1]   Plaintiffs' complaint originally named Defendant Rent-A-Center Franchising International, Inc., but both parties in briefing have addressed Defendant Rent-A-Center, Inc. as the correctly titled party.   *See Def.'s Mem. in Supp.*, ECF No. 6, at 1 n.1; *Pls.' Resp. in Opp.*, ECF No. 7, at 1 n.1.

However, Plaintiffs allege that they still fear for their safety and suffer emotional distress during their daily job duties.   *Id.* at ¶ 29-30.

     Plaintiffs allege the following events as evidence to racial discrimination.   When speaking to Plaintiff Eric House on the phone, a customer used "the racial epithet 'ni**er' and threated (sic) to travel to the store and 'kill all you ni**ers.'"   *Id.* at ¶ 14.   After informing Defendant about this conversation, Plaintiffs were told they would have to continue to conduct business with these customers.   *Id.* at ¶ 16.   Plaintiff Marquel Ali came to work one day and saw a burned couch sitting in front of the store with the letters "KKK" painted on the wall above it.   *Id.* at ¶ 17. Plaintiffs filed a police report and internal report with Defendant following the incident.   *Id.* at ¶ 18.   Defendant allegedly told Plaintiff Ali that it would resolve the matter but as of the complaint, has not taken action.   *Id.* at ¶ 21.   Plaintiff House allegedly feared for his safety when he saw two white men enter the store openly carrying pistols.   *Id.* at ¶ 22.   He reported the incident to corporate headquarters.   *Id.*   On June 20, 2016, another burned couch was discovered outside Defendant's store, resulting in another police report.   *Id.* at ¶ 24.

     Plaintiffs argue that they have continued to face racial discrimination and harassment that other employees do not experience.   *Id.* at ¶ 28.   Although Plaintiffs have reported these incidents to Defendant, Plaintiffs allege that Defendant has failed to investigate, take action, and ensure the safety of Plaintiffs and like-situated employees.   *Id.* at ¶¶ 27, 30.   As a result, Plaintiffs have suffered emotional distress and consider Defendant's store a hostile working environment.   *Id.* at ¶¶ 29, 44.   Plaintiffs filed suit with this Court on July 20, 2016 asking for injunctive relief, actual damages, compensatory damages, punitive damages, and attorneys' fees and costs.   Defendant subsequently filed its motion to dismiss and to compel arbitration.

## II.     Legal Standard

Defendant's motion is brought pursuant to the Federal Arbitration Act (FAA) to compel arbitration.[2]  9 U.S.C. § 1, *et seq.*   The FAA specifies that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2.   Federal courts can invalidate an arbitration agreement, however, by applying traditional contract defenses such as "fraud, duress, or unconscionability … without contravening § 2."   *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).   If a person subject to an arbitration agreement brings a civil suit before a federal district court, "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had."   9 U.S.C. § 3.

A party can compel arbitration by demonstrating that: (1) a dispute exists between the parties; (2) a written arbitration agreement covers that dispute; (3) the transaction relates to interstate commerce; and (4) the other party failed to arbitrate the dispute.   *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002).   "The FAA reflects a liberal federal policy favoring arbitration agreements."   *Id.* at 500 (internal quotation marks and citation omitted).   A federal district court, therefore, must resolve any "ambiguities as to the scope of the arbitration

---

[2] Defendant alternatively brought its motion under Federal Rule 12(b)(1) and/or 12(b)(6). *Def.'s Mot. to Dismiss*, ECF No. 5, at 1 n.1.  Due to its late responsive pleading, Defendant has waived its time to make a motion to dismiss.   However, the Court can convert the Motion to Dismiss under 12(b)(6) as a Motion for Judgment on the Pleadings under 12(c) to the extent necessary.   The Fourth Circuit has ruled that the two standards are the same.   *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002).   The Court, however, finds Defendant's motion to be appropriately brought under the FAA and defers analyzing it under a 12(c) motion.

clause itself … in favor of arbitration."   *Volt Info. Scis. Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

### III.    Discussion

In support of its motion, Defendant attached a declaration of Mr. Marc Tuckey, Defendant's Human Resources Director, who verified the signed documentation by both Plaintiffs regarding arbitration agreements.   ECF No. 5-1.   During the employment application process, Plaintiff House electronically signed the document that included an arbitration agreement on December 28, 2012, and Plaintiff Ali electronically signed the same on December 2, 2015.   *Id.* at 20-21, 24-25.   The agreement stated "that any and all claims and/or disputes, past, present or future, between me and the Company, arising out of or related to my … employment … shall be decided by an arbitrator through arbitration and not by way of court or jury trial."   *Id.* at 20, 24-25.   In the middle of the paragraph, the agreement contains a delegation provision, specifying that "covered claims and/or disputes include any claim or controversy regarding this Arbitration Agreement or any portion of the Arbitration Agreement or its interpretation, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Arbitration Agreement or any portion of it is void or voidable."   *Id.* at 20, 25.   Before the signature, in all capital letters, the agreement warned the applicant "BY ELECTRONICALLY SIGNING BELOW, YOU ARE AGREEING THAT YOU HAVE CAREFULLY READ THIS ARBITRATION AGREEMENT AND ARE (sic) YOU ARE GIVING UP YOUR RIGHT TO A COURT OR JURY TRIAL, AND … YOU AND THE COMPANY ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS ARBITRATION AGREEMENT."   *Id.*

The Mutual Agreement to Arbitrate Claims (Mutual Agreement), which contains a more detailed description of Defendant's arbitration process, was physically signed by Plaintiff House

on January 9, 2013 and electronically signed by Plaintiff Ali on December 17, 2015.   *See id.* at 5-9, 10-14.   The Mutual Agreement is included as part of the documentation employees must review and agree to during the onboarding process.   *Id.* at 2.   Under the heading Arbitration Procedures, the agreement again contains a delegation provision, stating that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or part of this Agreement is void or voidable."   *Id.* at 7, 12.   Before the signature of this document, the agreement warns in all capital letters that applicants are waiving "our rights to a jury trial" and had "been given the opportunity to discuss this agreement with my private legal counsel."   *Id.* at 9, 14.

Plaintiffs argue that these agreements to arbitrate should not be enforced for a variety of reasons.   First, Plaintiffs challenge the timeliness of Defendant's motion.   Second, Plaintiffs attack the applicability of the agreement over claims brought under § 1981 for racial discrimination in the workplace.[3]   Third, Plaintiffs challenge the delegation provision affording the arbitrator the ability to determine the enforceability of the agreement.[4]   Plaintiffs also assert the alleged lack of consideration, the procedural and substantive unconscionability of the agreement, and a constitutional right to a jury to prevent the enforcement of the agreement.

This Court must first determine whether Defendant's motion is timely and allowed to be considered.   Finding that it is, the Court follows the Supreme Court's guidance from *Rent-A-*

---

[3] The applicability of the arbitration agreement to certain claims falls under the delegation provision, and the Court will address the challenges to the delegation provision first.   As further explained in this Opinion, the delegation provision is valid and enforceable, so any challenges to the applicability of the agreement to § 1981 claims are to be brought before the arbitrator.

[4] The Supreme Court defined a delegation provision as "an agreement to arbitrate threshold issues concerning the arbitration agreement."   *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

*Center, West, Inc. v. Jackson* to determine whether the delegation provision itself is enforceable. 561 U.S. 63 (2010).

### a. Timeliness of Defendant's Motion

Defendant filed the instant motion on August 29, 2016.   The Summons Report on the docket specifies that Defendant's answer was due on August 23, 2016, but Defendant failed to file any responsive pleading.   *See Summons Accepted for Serv.*, ECF No. 4.   Plaintiffs argue that Defendant had to file its motion to dismiss and compel arbitration within this time period and that for its failure, Defendant's motion should be denied without consideration.   *See Pls.' Resp. in Opp.*, ECF No. 7, at 1.   Rather than move for default for the lack of responsive pleading, however, Plaintiffs ask the Court to deny Defendant's motion and allow the case to continue in federal court. *Id.* at 5-6.   Defendant argues that, notwithstanding its failure to file a responsive pleading, its motion falls under the FAA's authority rather than the Federal Rules' deadline to file a motion to dismiss.   *See Def.'s Reply*, ECF No. 8, at 3.

The FAA requires a federal district court to stay a proceeding pending arbitration if one of the parties makes an application to the court to enforce the parties' arbitration agreement.   9 U.S.C. § 3.   The statute does not require a party to file the motion to compel arbitration within any specified time period.   Whether a party has waived its right to compel arbitration depends on whether that party "so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay."   *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 586 (4th Cir. 2012) (internal quotation marks and citation omitted).   Even if the moving party engages in litigation before asking the court for arbitration, the court must still ask "whether the party objecting to arbitration has suffered *actual prejudice*."   *Id.* (citation omitted).   To determine actual prejudice, a court must look at the

amount of delay and the level of litigation participation at the time of the motion.  *Id.* (citing *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 252 (4th Cir. 2001)).

Here, Defendant has not engaged in the litigation process at all, especially since it failed to file a responsive pleading.   The case has been pending in this Court for a matter of months, and no discovery has taken place.   Defendant has not delayed the proceeding by asking the Court to compel arbitration as it moved the Court to do so in its first participation in the case.   Plaintiffs have not yet devoted time and resources to discovery and may still present their allegations before an arbitrator.   The prejudice cited in Plaintiffs' Response focuses on a belief that arbitration does not provide the same opportunity to present racial discrimination claims as a federal court would allow.   *See Pls.' Resp. in Opp.*, ECF No. 7, at 5 ("Plaintiffs submit that if this Court were to grant Defendant's motion to compel arbitration that it will result in enormous prejudice to them because it will completely deprive them of a judicial remedy for their racial discrimination claims").   The Court finds this argument on general prejudice to be unavailing as it does not respond to why Plaintiffs would be prejudiced for granting a motion to compel at this time in the litigation process. Moreover, the arguments presented by Plaintiffs are unconvincing as "Congress declared a national policy favoring arbitration."   *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *see also Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 90 (4th Cir. 2005) (rejecting policy arguments that focus on the "general antipathy to arbitration already considered and rejected by the Supreme Court and this Circuit").   Accordingly, the Court finds that Defendant has not waived its right to compel arbitration because Plaintiffs have not suffered actual prejudice.

Plaintiffs also discuss in their Response that they could have sought a default judgment because of Defendant's deficiency in pleading, arguing that this Court should deny Defendant's motion because Plaintiffs are seeking "a far less drastic decision than default" by requesting the

case move forward.   *See Pls.' Resp. in Opp.*, ECF No. 7, at 5.   The Court finds this line of analysis

unavailing because Plaintiffs never moved for default.   Moreover, Defendant informed the Court

that it miscalculated the timing for a responsive pleading, which is not excusable but also not

indicative of bad faith.   Moreover, Plaintiffs are not prejudiced because Defendant could have

moved to compel arbitration later in the proceeding.   Defendant should have filed an answer or

motion to dismiss within the 21-day window, but the Court does not find Plaintiffs unfairly

prejudiced as a result.   Therefore, the Court will consider Defendant's motion in full.

### b.  Delegation Provision

The FAA's characterization of arbitration agreements demonstrates how they are simply

another form of contract and, thus, can be invalidated by contract defenses.   *Rent-A-Center*, 561

U.S. at 67.   A delegation provision "is simply an additional, antecedent agreement the party

seeking arbitration asks the federal court to enforce."   *Id.* at 70.   If a party fails to challenge the

delegation provision, the court must allow the arbitrator to determine enforceability and

unconscionability of the underlying arbitration agreement.   *Id.* at 72.   However, "[i]f a party

challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court

must consider the challenge before ordering compliance with that agreement under §4."   *Id.* at 71.

The arbitration agreement here is the same one challenged in *Rent-A-Center*.   *See Def.'s

Reply*, ECF No. 8, at 2 n.2 (explaining that the Mutual Agreement contains the same language).

In that case, the Supreme Court upheld the district court's granting of a motion to compel

arbitration because the plaintiff had not explicitly challenged the delegation provision, rather only

bringing unconscionability arguments against the agreement as a whole.   *Rent-A-Center*, 561 U.S.

at 72 ("Accordingly, unless Jackson challenged the delegation provision specifically, we must treat

it as valid under § 2 … leaving any challenge to the validity of the Agreement as a whole for the

arbitrator.").   The Court dismissed the plaintiff's unconscionability arguments because they focused on the unfair bargaining power, one-sided coverage, fee arrangements, and limitations in discovery attributable to the enforcement of the arbitration agreement as a whole and not to the delegation provision giving determination of the gateway issues to an arbitrator.   *Id.* at 73-74.

Here, however, Plaintiffs challenge the delegation provision as invalid.   *See Pls.' Resp. in Opp.*, ECF No. 7, at 12.   Defenses to contract are analyzed by looking to the corresponding state law, in this case West Virginia.   Challenging a delegation provision requires the opposing party to challenge the "validity, revocability or enforceability of the delegation provision itself." *Schumacher Homes of Circleville, Inc. v. Spencer*, 787 S.E.2d 650, 661 (W. Va. 2016).   Plaintiffs argue that the delegation provision does not include any explanation of waiver of jury trial rights, does not provide the employee a chance to consult with an attorney, and contains boilerplate language making the provision part of an adhesion contract.   *Pls.' Resp. in Opp.*, ECF No. 7, at 12.   These deficiencies allegedly prevent Plaintiffs from "knowingly, intelligently, and voluntarily understand[ing] that they agree to have an arbitrator—and not a court—decide whether the agreement arbitrate, itself, is valid."   *Id.* (internal quotations omitted).   Plaintiffs argue that the delegation provision is invalid "under general principles of West Virginia contract law" but fail to address specifically the tenet of contract law challenged.   The Court interprets Plaintiffs' arguments to challenge both the contract formation and the enforceability of the delegation provision as unconscionable.

First, to form a valid contract under West Virginia law, the contract must consist of an offer, an acceptance, and consideration between the parties.   *See Cook v. Hecks, Inc.*, 342 S.E.2d 453, 458 (W. Va. 1986).   "[A] party cannot be forced to submit to arbitration any dispute which he or she has not agreed to submit."   *Schumacher*, 787 S.E.2d at 657.   Plaintiffs' arguments

challenge whether Plaintiffs understood what they signed because they did not have time to consult with an attorney.   However, the Supreme Court of Appeals of West Virginia has held repeatedly that "a party to a contract has a duty to read the instrument."   *American States Ins. Co. v. Surbaugh*, 745 S.E.2d 179, 190 (W. Va. 2013); *see also Reddy v. Cmty. Health Found. of Man*, 298 S.E.2d 906, 910 (W. Va. 1982) ("A person who fails to read a document to which he places his signature does so at his peril.").   If Plaintiffs read the entirety of the agreement before signing it, including the delegation provision, it would be clear that they had the right to a consult an attorney before signing, that they were giving up a right to a jury trial to decide the issues presented, and that an arbitrator would decide any of the enforceability challenges.   All of this is stated within the Mutual Agreement in plain language, and Plaintiffs will be bound to have read it.   There is no requirement that the delegation provision itself must contain constitutional waivers or references to attorney assistance to be valid.   Therefore, the Court rejects Plaintiffs' arguments that the contract is invalid for lack of understanding.[5]

Second, unconscionability under West Virginia law requires a party to prove both procedural and substantive unconscionability.   *See Nationstar Mortg., LLC v. West*, 785 S.E.2d 634, 638 (W. Va. 2016).   Although both forms of unconscionability need to be present, the court "should apply a sliding scale" to determine whether a contract is unconscionable, finding that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability [will be] required."   *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 227 (W. Va. 2012). "Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the

---

[5] The arguments in Plaintiffs' briefing amount to challenges on contract formation and unconscionability but do not suggest other contractual defenses, such as incapacity, ambiguity, coercion, fraud, misrepresentation, or other traditional contract defenses.   *See Schumacher*, 787 S.E.2d at 662-63 (listing contract defenses).

bargaining process." *Id.* (citations omitted).   On the other hand, substantive unconscionability focuses on the "unfairness in the contract itself and whether … [it] will have an overly harsh effect on the disadvantaged party." *Id.* at 228.

The Court does not find Plaintiffs' arguments on the delegation provision's unconscionability convincing.   The fact that Plaintiffs chose not to seek the advice of an attorney does not make the provision unconscionable as the failure to do so was Plaintiffs' decision.   The arbitration agreement as a whole warns about the waiver of jury trial rights and is not necessarily required to be within the delegation provision itself.   However, here, the delegation provision specifies that "[t]he Arbitrator, *and not any federal, state, or local court or agency,* shall have exclusive authority to resolve any dispute relating to the interpretation" of the agreement.   ECF No. 5-1, at 5.   This language clearly warns Plaintiffs that a court will not decide the enforceability of the agreement, which should lead to the subsequent conclusion that a jury will not be involved. Lastly, the boilerplate language argument goes to the characterization of the entire arbitration agreement as an adhesion contract rather than just the delegation provision.   *See Rent-A-Center*, 561 U.S. at 74 (finding that plaintiff's substantive unconscionability arguments were not tailored to the delegation provision itself).   Even considering the challenge as to the provision itself, the Supreme Court of Appeals of West Virginia has dictated that a contract of adhesion begins a procedural unconscionability analysis, but it will not make a contract *per se* unconscionable. *Brown*, 729 S.E.2d at 228.   Without other challenges specifically to the delegation provision to make the provision substantively unconscionable, the Court cannot find the provision unenforceable.   Plaintiffs cite other unconscionability arguments in their briefing, but again these arguments target the unconscionability of the arbitration agreement as a whole rather than the delegation provision itself.   *See Pls.' Resp. in Opp.*, ECF No. 7, at 15-16; *see also Mays v.*

-11-

*Nationstar Mortg. LLC*, Civ. No. 3:12-CV-43, 2012 WL 3028467 (N.D.W. Va. July 25, 2012) (finding that although plaintiff challenged the delegation provision as substantively unconscionable, plaintiff failed to expand and attack the delegation provision specifically).

In addition to the Court's determination on the validity of the delegation provision, once challenged, the Court must also find that the parties intended for the arbitrator to decide the gateway issues. *See AT & T Techs. v. Commc'n Workers*, 475 U.S. 643, 649 (1986). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* The Fourth Circuit requires more than "broad arbitration clauses that generally commit all interpretive disputes 'relating to' or 'arising out of' the agreement … [to] satisfy the clear and unmistakable test." *Carson v. Giant Food, Inc.*, 175 F.3d 325, 330 (4th Cir. 1999). To give gateway disputes to an arbitrator, the parties must use "clear and specific" language providing for that delegation. *Id.*

Here, Plaintiffs challenge the arbitration agreement's language putting the authority to the arbitrator to decide the gateway issues. *See Pls.' Resp. in Opp.*, ECF No. 7, at 12. Arguing that the language is simple boilerplate language that forms an adhesion contract, Plaintiffs suggest that the delegation provision cannot form clear and unmistakable intent to allow the arbitrator to decide such issues. *Id.* However, the delegation provision involved here is not a broad clause giving the arbitrator authority over all issues arising from the general dispute. Rather, the delegation provision at issue is clear and concise, stating that "[t]he Arbitrator … shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement." ECF No. 5-1, at 7. Language designating authority to an arbitrator cannot be made any clearer. If agreements incorporating by reference the rules of the American Arbitration Association (AAA), which in turn references a delegation provision, have

-12-

been upheld by courts, surely a concise statement within the agreement itself satisfies the clear and unmistakable test.  *See U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, No. 1:11cv371, 2013 WL 1332028, at *5 (E.D. Va. March 29, 2013) (collecting cases from seven circuits upholding references to the AAA rules).  Although the employment application uses slightly different wording, the same delegation is clearly stated when listing enforceability and applicability questions under covered claims.  ECF No. 5-1, at 20.  The Court thus finds that the parties' intent is clearly and unmistakably incorporated by the arbitration agreement, and both parties signed the documents agreeing to be bound.

Therefore, the delegation provision is not unconscionable and not invalid under any other defense to contract.  Moreover, the language contained within the Mutual Agreement and the employment application is clear and unmistakable and consequently should be enforced.  Many of Plaintiffs' challenges, although characterized as challenges to the delegation provision, attack unconscionability within the agreement as a whole and must be left to the arbitrator.  Further, any challenges to the arbitrability of the § 1981 claims, adequate consideration, and the constitutional right to a jury trial shall be made to the arbitrator as well.

### c.  Mandate to Stay

Defendant's Motion asks the Court to dismiss or alternatively stay the case pending arbitration.  *Def.'s Mot. to Dismiss*, ECF No. 5.  The FAA mandates district courts to "stay the trial of the action until such arbitration has been had."  9 U.S.C. § 3.  Although the § 3 mandate requires a stay, federal circuit courts are divided as to whether a district court retains the discretion to dismiss an action when all claims are referred to arbitration.  *See Reed v. Darden Rests., Inc.*, Civ No. 3:16-3872, 2016 WL 5796900, at *5 (S.D.W. Va. Oct. 3, 2016) (comparing cases).  In the Fourth Circuit, the court has differentiated procedural outcomes based on whether all claims

-13-

within a case are sent to arbitration.  *Compare Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999) (mandating a stay) *with Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").  In *Aggarao v. MOL Ship Management Company*, the Court recognized the tension between these two decisions but deferred resolving the issue.  675 F.3d 355, 376 n. 18 (4th Cir. 2012).

Here, Plaintiffs' claims involve racial discrimination claims brought under the West Virginia Human Rights Act and federal law under 42 U.S.C. § 1981.  *See Pls.' Compl.*, ECF No. 1.  The complaint also specifies common law actions for negligent infliction of emotional distress and outrage.  *Id.*  All of these claims fall within the arbitration agreement between the two parties as arising out of Plaintiffs' employment experience with Defendant.  As discussed above, any arguments on the validity of the arbitration agreement in terms on unconscionability and enforceability are covered by the delegation provision and will be left for the arbitrator. Following the guidance of this circuit in *Choice Hotels*, dismissal pending arbitration is appropriate when all issues are subjected to arbitration.

**IV.   Conclusion**

Accordingly, the Court finds that the delegation provision in the arbitration agreement is enforceable.  Thus, the Court **GRANTS** Defendant's Motion to Dismiss, or Stay the Case and Compel Arbitration (ECF No. 5) and **DISMISSES** this case **without prejudice** pending arbitration.

-14-

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          December 21, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE